IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| JOSE CUBAS,<br><br>          Plaintiff,<br><br>vs.<br><br>SKY CHEFS, INC., a Delaware Corporation;<br>and MICHAEL PODLUCKY, an individual;<br>and KERRI ROBERTS, and individual,<br><br>          Defendants. | **MEMORANDUM DECISION AND**<br>**ORDER GRANTING IN PART**<br>**MOTION TO COMPEL AND MOTION**<br>**FOR PROTECTIVE ORDER**<br><br>Case No. 2:04-CV-01099TS<br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

This case began with a nine-count complaint filed by Plaintiff Jose Cubas against his former employer Sky Chefs, Inc. and former managers Michael Podlucky and Kerri Roberts. Plaintiff alleges discrimination claims based on age, national origin, disability, the Family Medical Leave Act, and retaliation. In addition, Plaintiff alleges Utah state law claims for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing and Tortious Interference with Contract.

Cubas has moved[1] to compel Sky Chefs "to produce one or more representatives as 30(b)(6) deponents pursuant to Mr. Cubas' Notice of 30(b)(6) Deposition." In opposing this motion and the 30(b)(6) deposition, Defendants have also moved for a protective order against certain written discovery submitted by Plaintiff.[2]

---

[1] Docket no. 41, filed March 16, 2006. The notice of deposition is attached as Exhibit 1 to Memorandum in Support of Plaintiff Jose H. Cubas' Motion to Compel . . . (Supporting Memorandum), docket no. 42, filed March 26, 2006.
[2] Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Compel and Concurrent Motion for Protective Order On Plaintiff's Second Set Of Interrogatories and First Requests for Admission (Opposition Memorandum), docket no. 50, filed March 27, 2006.

**Timetable of Events**

Mr. Cubas served a first set of written discovery which Defendants answered, with some objections, on December 12, 2005.[3]  The discovery was tightly focused to the facts of Plaintiff's employment.

Mr. Cubas served Sky Chefs with a Notice of 30(b)(6) Deposition on February 10, 2006.[4] Sky Chefs objected to many of the deposition subjects stated in the Notice, on the ground that they "are not testimonial in nature, but rather, are more appropriately addressed through interrogatories, which require written responses."[5] Sky Chefs was concerned about the data requested in the notice, which could be more easily presented in written form.  Mr. Cubas served his second set of interrogatories[6] on March 9, 2006 "for the specific purpose of allaying Defendants' concerns about the 30(b)(6) deposition."[7]

Sky Chefs still objects to the 30(b)(6) deposition; to the written discovery about Sky Chefs' employment data and practices on a national level; and to discovery about Sky Chefs' employment of and discrimination against "non-Caucasians."[8]  Sky Chefs also claims Mr. Cubas has exceeded the permissible number of interrogatories.

---

[3] A copy of Defendants' Answers and Objections to Plaintiff's First Set of Interrogatories to Sky Chefs, Inc., is attached as Exhibit 6 to the Supporting Memorandum.
[4] A copy of the Notice is attached as Exhibit 1 to the Supporting Memorandum.
[5] Supporting Memorandum at 2 (quoting from March 2, 2006 Beth Golub Letter, attached to the Supporting Memorandum as Exhibit 2).  *See also* Opposition Memorandum at 12: "[M]any of [the deposition notice subjects] request only names or numbers, information that is not most appropriately communicated in testimonial form."
[6] Attached as Exhibit 4 to Supporting Memorandum.
[7] Plaintiff's Reply Memorandum in Support of His Motion to Compel (Reply Memorandum) at 8, docket no. 52, filed March 31, 2006.
[8] *See* Plaintiff's Second Set of Interrogatories to Sky Chefs, Inc. at 2 attached as Exhibit 2 to Supporting Memorandum.

**Deposition or Written Discovery?**

Generally, a party may select the method of discovery it chooses to use.  However, that initial selection is subject to objection if the method would subject "a party or person [to] annoyance, embarrassment, oppression, or undue burden or expense."[9]  A court may order "that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery."[10]  Of course the parties are encouraged to discuss and agree on these sorts of disputes, and to some extent, Plaintiff has accommodated Defendants' request that some of the discovery be sought in writing by sending the second set of discovery.  Plaintiff acknowledges there is "no perfect method for discovering complex data."[11]

Defendants still complain that the deposition notice is duplicative of the second set of interrogatories and that Plaintiff has not made an "offer to revise the deposition notice in light of its redundancy with the interrogatories."[12]  Specifically, Defendants complain that it is not prudent to expect deposition testimony about "names, addresses, and phone numbers of all persons involved in the decision to terminate Plaintiff's employment;" "'the number of persons' employed by Sky Chefs as of January 1, 2004 and 2005" and the "'date of hire' for each person employed nationwide at grade levels 14 through 17 for a seven-year period."[13]  The confusion is only due to the sequence of the deposition notice preceding the second set of discovery.  For the same understandable reason, there is duplication between the deposition notice and second set of discovery.  Revision is naturally needed.

---

[9] Fed. R. Civ. P. 26(c).
[10] Fed. R. Civ. P. 26(c)(3).
[11] Supporting Memorandum at 5.
[12] Opposition Memorandum at 11.

The magistrate judge invited Plaintiff to submit a revised draft of the notice of 30(b)(6) deposition, in light of the second set of written discovery.[14]  That was done, and the revised notice is lodged.[15]  It is substantially revised and narrowed, and consistent with the second set of interrogatories.

In addition, Defendants complain that "it would be impossible for a single corporate representative to testify to all of the widely varied subjects that Plaintiff identifies in his notice."[16]  To some extent, this problem will be ameliorated by the revision of the deposition notice, but it is understandable that a company spread so broadly and with so many employees might need more than one representative to adequately respond.

The 30(b)(6) deposition is still necessary and appropriate[17]  "to elicit testimony clarifying, authenticating, explaining, and contextualizing . . . information."[18]

### Geographic Scope of Discovery

Sky Chefs is a national company, which "employed approximately 9,951 people in 2003 and 8,890 in 2004 (the time period of many of Plaintiff's requests). . . . [I]n 2003 and 2004, respectively, there were 66 and 56 facilities nationwide that functioned in a similar capacity" as the Salt Lake City facility where Plaintiff worked.[19]  Throughout his employment, Plaintiff worked only at the Salt Lake City facility.[20]

---

[13] *Id.* at 13.
[14] Docket no. 60, filed April 3, 2006.
[15] Docket no. 62, filed April 7, 2006.
[16] Opposition Memorandum at 11.
[17] Defendants do not argue that the 30(b)(6) deposition is per se objectionable.  Opposition Memorandum at 13 and 17.
[18] Reply Memorandum at 8.
[19] Opposition Memo at 4.
[20] Amended Complaint ¶¶17-19, 23.

Most of the allegations of the Amended Complaint are against the two individual

defendants in this case, who were employed at the Salt Lake facility.[21]

> Plaintiff had no problems with or concerns about illegal discrimination and retaliation during his employment at Sky Chefs until Mr. Podlucky became his supervisor.[22]

> Mr. Podlucky and Ms. Roberts exercised significant control over the terms, conditions and privileges of Mr. Cubas' employment.[23]

> Upon information and belief, Mr. Podlucky and Ms. Roberts prefer to work with non-Hispanic, Caucasian managers [and] … persons younger than Mr. Cubas.[24]

> Mr. Podlucky and Ms. Roberts "engaged in workplace harassment and discriminatory conduct against Mr. Cubas based on his national origin [Hispanic/Salvadorian] and age, including: … discriminatory statements … that show bias to persons of Mr. Cubas' national origin, … physical aggression, … ridiculed Mr. Cubas … because of his national origin, … refused to speak with Mr. Cubas, … and interview[ed] other employees in an attempt to gain negative information about Mr. Cubas."[25]

> Mr. Cubas complained to Sky Chefs that "Mr. Podlucky and Ms. Roberts were illegally discriminating against him."[26]

Sky Chefs has, however, admitted that one person not employed at the Salt Lake City

facility, "John Finnotti, Corporate Human Resources Director" was "involved in the decision to

terminate Plaintiff's employment with Sky Chefs."[27]  Additionally, Plaintiff claims that

"Defendants have also engaged in a pattern of discrimination and harassment against other non-

Caucasians."[28]  This allegation might refer to other Sky Chefs representatives.

---

[21] Opposition Memorandum at 2.
[22] Amended Complaint ¶ 34.
[23] *Id.* ¶ 35.
[24] *Id.* ¶¶ 37-38.
[25] *Id.* ¶ 39.
[26] *Id.* ¶ 40.
[27] Sky Chefs' Response to Plaintiff's First Set of Interrogatories, Response No. 12, attached as Exhibit 6 to Supporting Memorandum.  *See also* Supporting Memorandum at 3.
[28] Amended Complaint ¶ 55.

Defendants minimize Finotti's involvement and claim that "[a]s an individual, Plaintiff is not authorized to bring 'pattern and practice' claims."[29] "Since Plaintiff cannot maintain a pattern and practice claim, the Court must consider whether discovery of personnel information about Sky Chefs' employees on a nationwide basis is appropriate in Plaintiff's individual, disparate treatment case."[30] However, the authority cited[31] by Defendants only states that the term "pattern and practice" often refers to class claims. "'Pattern or practice' refers to class-wide (as opposed to individual) disparate treatment claims."

"The statute [which uses the term "pattern or practice"] is 42 U.S.C. § 2000e-6(a), which authorizes the EEOC to bring suit where a 'pattern or practice' of racial discrimination is present in an employment practice."[32] But this conferral of authority on the EEOC does not divest individuals of the right to allege they have been injured by a "pattern or practice," or even to seek remedies for such practices

> Defendant maintains that this [statute] vests exclusive authority to raise pattern or practice issues in the EEOC. The decision relied upon by defendant is McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which states that proof of a pattern and practice of discrimination would not in itself justify granting relief to an individual plaintiff, but is merely one method of proving that the particular act of which the private litigant complains was discriminatory. . . .[33]

Proof of a pattern or practice might support Plaintiff's claims. To that extent, some national discovery might be merited.

---

[29] Opposition Memorandum at 6.
[30] Opposition Memorandum at 7.
[31] *Anderson v. Boeing Co.*, 222 F.R.D. 521, 539 (N.D. Okla. 2004).
[32] *Dickerson v. U.S. Steel Corp*, 64 F.R.D. 351, 359 (E.D. Pa. 1974).
[33] *Id.*

Defendants paint a little broadly when they say that Plaintiff's discovery seeks to "examine Sky Chefs' actions on virtually every employment transaction -- from hiring to discipline to termination and everything in between – involving every single employee, nationwide, regardless of job title and, for the most part, regardless of grade level."[34]  Actually, the national discovery in the original notice of deposition was more narrow.  And the draft revised notice of deposition and second set of interrogatories only seek national *statistical data*, not individual information, of persons in two categories related to the litigation, over restricted time periods:

> [Those] whose employment terminated in 2004 as a result of a reduction in force and/or by actions taken by Sky Chefs; and
> [Those] employed by Sky Chefs in the United States who were disciplined and/or put on an action plan during 2003 and/or 2004.[35]

The information will provide a valid statistical context for this case.  It may well benefit Defendants as much as Plaintiff.  The case on which Defendants rely asked for "*names* of all Western employees national wide of the first through fourth level ranks (and their supervisors) who refused transfers sometime during the years 1970-80 and how Western responded to such refusals."[36]  These requests are not so burdensome or invasive.[37]

---

[34] Opposition Memorandum at 7.

[35] Interrogatories 5 and 6, Second Set of Interrogatories.

[36] *Heward v. Western Electric Co.*, No.83-2293, 1984 WL 15666, at *6 (10th Cir. July 3, 1984)(unpublished decision)(emphasis added).

[37] At times, it seemed unclear that Defendants had read the interrogatories.  They state that Interrogatory No. 7 asked for information "Sky Chefs employees *throughout the nation*, at Levels 14 through 17, who was terminated for any reason whatsoever in a seven-year period received" when the scope is actually "persons hired by Sky Chefs at a starting grade level of 14 or above *at the Salt Lake City location* during the time Michael Podlucky was the General Manager of that installation, severance and the amount each employee received."  Defendants' Reply Memorandum . . . at 5, docket no. 61, filed April 4, 2006.  Later, the interrogatory was quoted correctly.  *Id.* at 10.

### Non-Caucasian

Defendants object to discovery regarding "non-Caucasians."  "It is indisputable that Plaintiff's race and national origin claims are premised on his being Hispanic and Salvadorian. Yet, Plaintiff seeks to broaden his evidence by re-categorizing himself and as a 'non-Caucasian' and making discovery requests that seek information in that context."[38]

Defendants rely on an Eighth Circuit case which comments that a district judge should have excluded evidence of discrimination against races other than the Plaintiff's African-American race. "Evidence that [the supervisor] referred to his co-worker . . . as a 'camel jockey' and made anti-semitic statements should have been excluded because it was not directly relevant to the issues in this case."[39]  The error was insignificant in the case because there was a great volume of evidence of the supervisor's prejudice against African-Americans.  "Admission of these statements [regarding other races] in the course of a three week trial with a great volume of evidence was harmless, however."[40] The opinion gives no explanation of the reason the evidence should have been excluded.  Was it because it pertained to persons of other races or because it was cumulative?

The better rule is that "[d]iscrimination against others on a different statutory basis is not relevant;"[41] that is; if the case is a sex discrimination case, racial prejudice is not relevant.  A Fifth Circuit opinion approvingly cited a district court which "excluded evidence of racial animus in a case alleging discrimination based on sex and marital status because the court found that there existed only a 'weak correlation' between sex and race discrimination."[42]  Then, the Fifth Circuit held that in the race discrimination case before it, the trial court properly excluded evidence of "insensitive

---

[38] Opposition Memorandum at 14.
[39] *E.E.O.C. v. HBE Corp.,* 135 F.3d 543, 552 (8th Cir. 1998).
[40] *Id.*
[41] Merrick T. Rossein, *Employment Discrimination Law and Litigation* § 17:59 (2005).

actions and unsympathetic attitudes towards other employees who were members of several

disadvantaged minority groups, including persons with medical, health and handicap problems . . .

."[43]

In this case, evidence of other race-discriminatory actions and attitudes will likely be

admissible evidence.  This is particularly true in this district, where the minority population is so

small that it tends to be regarded as a cohesive unity by the overwhelming majority.  Less than 15%

of Utah's population is non-Anglo/European.[44]  This is about half the national average.[45]  The

evidence of other racial discrimination is discoverable.

Another reason not to be restrictive is that defendants are asking for a restriction of

discovery, not for exclusion of specific proffered evidence at trial. The blanket exclusion of evidence

before trial is looked on with disfavor in discrimination cases.[46]  Therefore, at this stage, discovery on

the bases of alleged discrimination – age, national origin, and disability – should be permitted,

without confining discovery to a particular national origin.

### Number of Interrogatories

Mr. Cubas' First Set of Interrogatories was comprised of fifteen interrogatories.[47]

Defendants do not challenge that number. Plaintiff's second set includes eight interrogatories,

which Defendants claim are really 34 because the subparts must be counted separately.

Defendants claim this is improper because leave of the court is required to serve more

---

[42] *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 358 (5th Cir. 1995).
[43] *Id.* at 356.
[44] Utah QuickFacts http://quickfacts.census.gov/qfd/states/49000.html  (last visited April 8, 2006); Population Estimates for [Utah] Counties by Race and Hispanic Origin:  July 1, 1998 http://www.census.gov/population/estimates/county/crh/crhut98.txt (last visited April 8, 2006).
[45] *Id.*
[46] *Kelley,* 61 F3d. at 359.
[47] Opposition Memorandum at 13.

interrogatories than "25 in number including all discrete subparts."[48]

Review of the interrogatories shows that the subparts are not "discrete" under the rule.[49] They do not "seek information about discrete separate subjects."[50]  As Plaintiff states, "each request sets forth a category of employees and then simply asks for basic identifying information on those employees. . . .  [T]he secondary questions seek only to gain a rudimentary profile of who those people are."[51]

## ORDER

IT IS HEREBY ORDERED that the motion to compel[52] is GRANTED IN PART and the motion for protective order[53] is GRANTED IN PART.

Defendants shall respond to the second set of interrogatories and first set of requests for admissions within twenty days or such other time period as the parties may agree.  Plaintiff shall propound the draft amended notice of 30(b)(6) deposition, so that the deposition is taken after the responses to the second set of discovery, and Defendants shall comply.

---

[48] Fed. R. Civ. P. 33(a).
[49] Reply Memorandum at 10.
[50] Notes of Advisory Committee on 1993 Amendments to Rules.
[51] Reply Memorandum at 10-11.
[52] Docket no. 34, filed February 28, 2006.
[53] Docket no. 58, filed March 27, 2006.

IT IS FURTHER ORDERED that no sanctions are imposed as the parties' positions were

substantially justified.[54]

April 10, 2006.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge

---

[54] *Hutchinson v. Pfeil*, No. 98-5043, 1999 WL 1015557, at *3 (10th Cir. Nov. 9, 1999)(unpublished decision).